UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CORTEZ ROBINSON,

                Plaintiff,

v.                                                                      Case No. 24-cv-789-pp

TAMI J. SCHULT,

                Defendant.

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Plaintiff Cortez Robinson, who is incarcerated at Racine Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendant violated his right to adequate food under the Eighth Amendment. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 4, and screens his complaint, dkt. no. 1.

**I.**    **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 4)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On July 17, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $55.50. Dkt. No. 6. On August 1, 2024, the court received payment of the full $405 civil filing fee. Because the plaintiff paid the filing fee, he does not need the court's permission to proceed without prepaying it. The court will deny as moot his motion for leave to proceed without prepaying the filing fee.

**II.     Screening the Complaint**

A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names Food Service Administrator Tami J. Schult as the only defendant. Dkt. No. 1 at 1. The plaintiff alleges that at around 5:00 to 5:45 p.m. on February 25, 2024, he was eating a chocolate bar that was served as part of his dinner. Id. at 2. The plaintiff says he "noticed a sharp pain on the upper left side of [his] mouth" and noticed that his "teeth and gums were bleeding." Id. He showed Sergeant Kennedy (not a defendant) what he "had found inside the chocolate bar," and Kennedy told the plaintiff to show Food

Service. Id. at 2–3. The plaintiff also asked to see medical staff and dental staff, but Kennedy and Lieutenant Dangelser (not a defendant) told him that "dental was unavailable until the following day." Id. at 3. The plaintiff says he had a "metal shaving stuck in [his] mouth" until the next morning, when he saw Dr. Yang (not a defendant) to remove the 1mm shaving. Id. The plaintiff wrote to Schult about the incident, and she responded that "she was sorry for what had happened to [him] and the issue ha[d] been investi[g]ated and corrective action ha[d] been in place." Id.

The plaintiff attached several pages of exhibits to his complaint. Dkt. No. 1-1. These exhibits include an incident report from February 25, 2024; pictures of the contaminated chocolate bar; his health service requests to the medical and dental offices; open records requests he filed about the incident; correspondence from Department of Corrections officials; and administrative grievances the plaintiff filed about the incident with the prison and the State of Wisconsin. Id.

Some of these exhibits add detail to the plaintiff's complaint. The incident report, which Sergeant Kennedy wrote, recounts the plaintiff's allegations about the contaminated bar. Id. at 2. It notes that the plaintiff showed Kennedy "a random black shiny substance in his cookie." Id. He told Kennedy that "he ate a piece and it felt like metal." Id. Kennedy contacted kitchen staff and sent the plaintiff to show them the contaminated bar. Id. Staff told Kennedy "there was something in there and they did not know what it was but they were sending [the plaintiff] back to the unit with some apples." Id. The

4

plaintiff later reported to Kennedy that "he had a piece of the metal stuck between his teeth," and Kennedy advised him to use a toothpick to get it out. Id. The plaintiff said he would attempt to use floss to remove the metal piece. Id. Kennedy notes that the plaintiff spoke with Lieutenant Dangelser, who advised Kennedy to write the incident report. Id. One of the plaintiff's open records requests notes that the metal was in the chocolate bar "from the constant scraping of the pan." Id. at 22. The report from the plaintiff's dentist appointment notes that the metal shavings found in the bar "were tiny and glittering," and that he "could feel an object" between the plaintiff's teeth during the examination. Id. at 26. Finally, the complaint report on the plaintiff's administrative complaint notes that Schult responded to an Interview/Information Request about the incident on February 28, 2024, stating, "At this time the issue has been investigated and corrective action has been in place. Thank you." Id. at 28. The complaint examiner recommended affirming the plaintiff's complaint "to acknowledge that shavings were found in the peanut butter bar that [the plaintiff] was eating." Id. at 30. Warden Taylor accepted that recommendation and affirmed the plaintiff's complaint. Id. at 31.

The plaintiff claims that Schult was deliberately indifferent to the risk of metal shavings in the chocolate bars. Dkt. No. 1 at 3. He says that Schult "knew from previous complaints about objects being found inside food," but she failed "to take heed and order new pans." Id. at 3–4. He says the metal shaving cased "extreme bleeding to the gums and mouth causing serious pain to the plaintiff." Id. at 4. The plaintiff seeks $1 million in compensatory

5

Case 2:24-cv-00789-PP    Filed 08/23/24    Page 5 of 10    Document 7

damages and unspecified punitive damages "so that no one else goes through what [he] experienced." Id. at 5. He also seeks "a preliminary injunctions [*sic*]," but he does not specify the purpose of the injunctions. Id.

C. Analysis

The court analyzes the plaintiff's allegations about metal in his food under the Eighth Amendment, which imposes a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Eighth Amendment protects against "deprivations of essential food" and "other conditions intolerable for prison confinement." Rhodes v. Chapman, 452 U.S. 337, 348 (1981)). But only "extreme deprivations" amount to cruel and unusual conditions of confinement. Giles v. Godinez, 914 F.3d 1040, 1051 (7th Cir. 2019) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). The court must judge the alleged deprivation "in accordance with contemporary standards of decency." Id. (citing Hudson, 503 U.S. at 8, and Rhodes, 452 U.S. at 346). To proceed, the plaintiff must show that he has been deprived of "'the minimal civilized measure of life's necessities,'" Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes, 452 U.S. at 347); and that prison officials acted with "deliberate indifference" to a substantial risk that he would suffer serious harm, Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

The plaintiff alleges that on one occasion in February 2024, he was served contaminated chocolate bars that contained metal shavings, which cut his mouth and gums and caused him pain. He says Schult, who is the prison's

food supervisor, failed to ensure that the bars were safe for consumption. This court and several courts in the Seventh Circuit have concluded that, "A single instance of contaminated food is insufficient to state a claim of deliberate indifference." Morris v. Buege, Case No. 23-cv-11-pp, 2023 WL 2465882, at *4 (E.D. Wis. Mar. 10, 2023) (citing Franklin v. True, 76 F.3d 381 (7th Cir. 1996) (unpublished) (concluding that one instance of food poisoning was insufficient to state an Eighth Amendment claim); see also Eines v. Maynard, Case No. 121CV00354JPHCSW, 2023 WL 6158834, at *5 (S.D. Ind. Sept. 21, 2023) (citing cases for the proposition that "a single instance of unintentional food poisoning will never give rise to an Eighth Amendment violation"); Becerra v. Kramer, Case No. 16 C 1408, 2017 WL 85447, at *5 (N.D. Ill. Jan. 10, 2017) ("[A] single, isolated incident of food poisoning, even if suffered by many prisoners at an institution, does not rise to the level of a constitutional violation."). The situation is different if the plaintiff alleges "'that prison officials knew of a pattern of inmates being injured by bad food and did not[hing] to remedy the problem.'" Morris, 2023 WL 2465882, at *4 (quoting Olrich v. Kenosha County, Case No. 18-cv-1980-pp, 2020 WL 1169959, at *3 (E.D. Wis. Mar. 11, 2020); and citing Green v. Beth, 663 F. App'x 471, 472 (7th Cir. 2016)).

Another judge in this district recently screened a nearly identical complaint alleging harm from this same incident at Racine on February 25, 2024. See Conley v. Schult, 24-cv-725-la, Dkt. No. 14. Judge Adelman dismissed that complaint, finding that "[n]othing in the complaint or plaintiff's

attachments suggests this was a recurring issue or that prison officials were aware that the peanut butter bars were contaminated." Id. at 5. Similarly, the plaintiff in this case has not alleged a pattern of contaminated food or of incarcerated persons becoming ill. He alleges that he consumed a contaminated chocolate bar on one occasion that injured his mouth. He supplied documents confirming that he consumed the contaminated bar and was injured on only one occasion and showing that the prison responded to his complaints about the issue and provided him medical and dental care.

But unlike the plaintiff in in Conley, the plaintiff here also alleges that Schult "knew from previous complaints about objects being found inside food" and failed "to take heed and order new pans." Dkt. No. 1 at 3–4. This suggests that although the plaintiff was harmed while eating a contaminated bar on only one occasion, Schult had knowledge from previous complaints that the metal pans on which meals were served to incarcerated persons were problematic. Accepting this allegation as true and liberally construing the complaint, the court finds that the plaintiff adequately states a claim about a pattern of harm from contaminated food of which Schult was aware on February 25, 2024, when the plaintiff ate a contaminated chocolate/peanut butter bar and was harmed by metal shavings in or on the bar. The court will allow him to proceed on this Eighth Amendment claim.

The plaintiff seeks damages and a preliminary injunction or injunctions. But he does not specify what relief he seeks with the injunctions or what harm he seeks to avoid or prevent. The court cannot issue a general preliminary

injunction without any stated purpose. The court will allow the plaintiff to proceed on his request for damages but will not issue a preliminary injunction.

## III. Conclusion

The court **DENIES AS MOOT** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 4.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Tami J. Schult. Under the informal service agreement, the court **ORDERS** the defendant to respond to the complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court issues a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 23rd day of August, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**

10
Case 2:24-cv-00789-PP   Filed 08/23/24   Page 10 of 10   Document 7